# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| IN RE ) | |
| ) | |
| **CLARENCE JOSEPH RAKE** ) | Case No. 05-22188-TLM |
| ) | |
| Debtor. ) | **MEMORANDUM OF DECISION** |
| ) | |
| _____ ) | |

## INTRODUCTION

On November 30, 2006, the chapter 7 trustee in this case, Ford Elsaesser ("Trustee"), filed a motion seeking approval of a compromise and settlement. Doc. No. 134 (the "Motion"). Clarence Joseph Rake ("Debtor") filed an objection to the Motion. *See* Doc. No. 142. There were no other objections.

The Motion and Debtor's Objection came on for hearing on January 9, 2007. Upon the submission of post-hearing briefs on January 29, the matter was taken under advisement. Upon consideration of the parties' arguments and the evidence presented, the Court enters the following findings of fact and conclusions of law. Fed. R. Bankr. P. 9014 and 7052 incorporated thereby.

## BACKGROUND AND FACTS

In October, 2005, a few days before his October 14 petition commencing this bankruptcy case, Debtor filed an Idaho state court action against Eileen

MEMORANDUM OF DECISION - 1

Wright, Case No. CV-05-02246 in the Second Judicial District, Nez Perce County (the "Wright suit").[1] The parties agree that, in the Wright suit, Debtor sought to enforce and foreclose a materialman's lien against Wright's real property. The lien was filed of record in Nez Perce County on May 31, 2005, as Instrument No. 718117. *See* Rake affidavit, Doc. No. 145 at Ex. 1.[2]

Rake had been involved in an extended personal relationship with Wright during which, among other things, Rake and Wright lived together on real property owned by Wright and on which they jointly developed a quarter horse breeding operation. The relationship foundered and on May 29, 2005, Wright locked Debtor out of the real property. Debtor filed his lien two days later "to protect [his] investment in the horse raising operation." Doc. No. 145 at 4.

In the lien he signed and filed of record on May 31, 2005, Debtor alleged that he "in accordance with a contract with Joe Rake . . . furnished labor, services or materials consisting of . . . metal fencing, roping equip, trucks, construction equip, labor, masonry & tiles, tools, personal belongings, fax machine, printer,

---

[1] Trustee says the suit was filed October 10. Doc. No. 134 at 2. Counsel for Wright says it was October 12. Doc. No. 104 at 2. None of the parties to the instant contested matter provided the Court with a conformed copy of the complaint, or any other copy for that matter. The Court scoured its files and located what purports to be a copy of the complaint in the Wright suit. It was attached as "Ex. F" to a brief by Debtor's ex-wife on a § 1112(b) conversion motion and it bears an October 12, 2005 date stamp. *See* Doc. No. 94 at Ex. F.

[2] By the agreement of the parties at hearing, Rake's affidavit was admitted into evidence as his affirmative or direct testimony, subject only to in-court cross-examination. The exhibits that were attached to the affidavit have therefore been considered as well.

MEMORANDUM OF DECISION - 2

trailers, horses, baseball equip" on property owned by Wright. Debtor's lien alleges that the total value thereof was $93,000.00 and that all that amount was unpaid. He alleges in the lien that the first of the items was furnished "on August, 2002" and that the last of the materials was provided on May 30, 2005.[3]

Debtor's lien asserts that notice was served on Wright on May 31 by certified mail. At hearing, Debtor could not testify that he in fact mailed a copy.[4]

Debtor later made arrangements with Wright to, and he did, retrieve many of these items of personal property (his tools, personal items, trucks, fork lift, jet boat, scaffolding, 6 horses, trailer). *See* Doc. No. 145 at 4. He did not recover the metal fencing (which is also the subject of the Dillon suit discussed below). Nor did he achieve a resolution of what he felt was compensation owed for labor and services in the development of the horse breeding operation with Wright, which included masonry work he performed on facilities as well as supervision of other laborers. Debtor also asserts his labor was provided in running the horse breeding operation itself, and composes part of the "total investment" in the operation

---

[3] Despite the assertion of this May 30 "last date" in the lien, Debtor testifies in his affidavit that he left the property on May 29 to purchase some tickets to an athletic event and upon returning that same afternoon found himself locked out of the premises. Doc. No. 145 at 4. There is no evidence of any provision of labor or materials on May 30.

[4] Debtor filed a post-hearing affidavit, Doc. No. 156, addressing the issue of providing certified mail notice, claiming that he found a receipt therefor. He alleges it is attached to the affidavit, though it is not. Trustee's brief alludes to a post-hearing provision by Debtor of a certified mail receipt. *See* Doc. No. 154 at 3-4 and Ex.1. The attempted "supplementation" of the closed evidentiary record is addressed below.

MEMORANDUM OF DECISION - 3

which he feels is worth $93,000.00.

Wright later sold her real property. Of the sales proceeds, $93,000.00 was placed in her lawyer's trust account due to the pendency of the lien and the Wright suit.

On October 14, 2005, the same day Debtor filed his bankruptcy petition, Debtor filed a complaint in Idaho state court against Frank Dillon, Case No. CV-05-00269, Second Judicial District, Nez Perce County (the "Dillon suit").[5] The Dillon suit seeks return ("claim and delivery") of metal fencing panels Debtor alleges he provided and Wright gave to Dillon, or a judgment against Dillon for their value.

When Debtor filed his chapter 7 petition on October 14, 2005, Trustee was appointed. Trustee commenced asset turnover litigation against Debtor in regard to four trucks, a motorcycle, and a jet boat. In connection with that matter, Wright responded by asserting a perfected security interest in three trucks and the motorcycle.[6] *See* Doc. No. 25. She also sought stay relief to continue with defense of the Wright suit. *See* Doc. No. 26.

---

[5] The parties also failed to provide a copy of this complaint, though all seemed to agree it was filed before Debtor's bankruptcy petition was filed. *Accord*, Doc. No. 1 at statement of financial affairs (referencing the Dillon suit). As with the Wright suit, the Court's search of the files found what is purportedly a copy of the signed and filed complaint in the Dillon suit, attached to the Debtor's ex-wife's brief. *See* Doc. No. 94 at Ex. G.

[6] Wright's pleading responding to the Trustee's turnover demand on Debtor was limited to these specific chattels. However, the proposed settlement indicates that Wright claimed a security interest in the remaining truck and the jet boat and trailer as well.

MEMORANDUM OF DECISION - 4

At this point, in May, 2006, Debtor converted the case to a chapter 11. *See* Doc. Nos. 30, 32. Wright's stay relief motion was thereafter granted with Debtor's consent. *See* Doc. Nos. 45 (minute entry); 62 (endorsed order).[7] However, problems quickly developed in the chapter 11. Following several hearings, the case was re-converted to a chapter 7 on October 16, 2006, and Trustee was again appointed. *See* Doc. No. 110.

On November 30, 2006, Trustee filed the compromise motion now before the Court. Doc. No. 134. The gist of the proposed settlement is this.

Trustee agrees to dismiss, with prejudice, both the Dillon suit and the Wright suit. In exchange, Wright will release any and all claims she might have against the estate. Specifically, she will release any claim to the three trucks, the motorcycle, and the jet boat and trailer, and she will surrender the certificates of title to the same.[8] Further, Wright will pay $5,000.00 to the estate. There is no consideration paid by Dillon under the Motion.

Debtor opposes the compromise, contending that the claims of the estate

---

[7] Several months after consenting to the motion, Debtor (through new counsel) sought to "reconsider" the order granting stay relief or, alternatively, to reimpose the stay. *See* Doc. No. 82. That motion was heard simultaneously with the motion to convert the case back to chapter 7, discussed below, and ultimately the Court deferred ruling on that motion subject to renotice after the chapter 7 trustee had an opportunity to evaluate it. *See* Doc. No. 109 (minute entry). Debtor never renewed the motion.

[8] Trustee already sold those chattels free and clear of liens, and Wright's liens attached to the proceeds. The Court has recently entered an order at Trustee's request authorizing new titles to be issued to the purchaser. The promised surrender of the titles is thus not significant, though the release of claims of Wright against the sales proceeds is.

MEMORANDUM OF DECISION - 5

being settled have value far in excess of what is to be received under the Trustee's negotiated resolution.[9] While notice of the compromise was appropriately given, *see* Fed. R. Bankr. P. 9019 and 2002(a)(3), no creditors objected.

## DISCUSSION AND DISPOSITION

### A. Post-hearing attempts to supplement the record

The Court must first clarify the extent of the evidentiary record. Debtor submitted evidence – his supplemental affidavit, Doc. No. 156 – after the evidentiary record was closed at the conclusion of the January 9 hearing. The Court authorized filing of post-hearing briefs, nothing more. Debtor has not requested, and the Court has not allowed, reopening of the record for additional evidence. The attempt to add new testimony or cure prior testimonial ambiguity is improper. The supplemental affidavit will be disregarded.

### B. Debtor's standing to object to the Motion

The Court must next address, as a threshold matter, whether Debtor's objection should be considered at all.

This Court noted in *In re Olson*, 06.3 I.B.C.R. 63, 2006 WL 2433448 (Bankr. D. Idaho 2006), that, if a debtor lacks a pecuniary interest in the distribution of assets of an estate, he lacks standing to object to a trustee's

---

[9] Debtor scheduled the Dillon suit as having a value of $16,100.00 (apparently the alleged value of the panels). He scheduled the Wright suit as having an "unknown" value, admitting however that "[t]here is a question as to whether the mechanics' lien qualifies under state statute." *See* Doc. No. 1 at sched. B.

MEMORANDUM OF DECISION - 6

proposed settlement. *Id.* at n. 7 (citing *Kieffer v. Riske (In re Kieffer-Mickes, Inc.)*, 226 B.R. 204, 208-09 (8th Cir. BAP 1998)). However, the existence of an exemption claim against the proceeds of such a settlement, or the potential of a solvent estate and full payment to all unsecured creditors resulting in distribution of surplus to the debtor, *see* § 726(a)(6), might satisfy the pecuniary interest requirement. *Id.*[10]

The court in *Cult Awareness Network, Inc. v. Martino (In re Cult Awareness Network, Inc.)*, 1997 WL 327123 (N.D. Ill. May 27, 1997), noted that in order to object to a trustee's proposed administration of assets of the estate, a debtor must show the requisite pecuniary interest and "cannot simply claim that there is a theoretical chance of a surplus in the estate, but must show that such a surplus is a reasonable possibility" by introducing evidence from which the court could make such an inference. *Id.* at *2.

Nothing has been presented to indicate that this is likely to be a case in which there is a surplus after full satisfaction of creditor claims. Debtor presented no direct evidence to that point, and his schedules do not show a likelihood of any surplus. *See* Doc. Nos. 1, 40 and 41. Further, no exemption is claimed in the causes of action or their fruits. *Id.* The Court concludes Debtor lacks standing to

---

[10] *Olson* was not the first case in this Court addressing standing issues. *In re Stone*, 03.2 I.B.C.R. 134, 135, 2003 WL 25273852 (Bankr. D. Idaho 2003), required a showing of a pecuniary interest as a precondition to objection, as did *In re Fuquay*, 90 I.B.C.R. 260 (Bankr. D. Idaho 1990).

MEMORANDUM OF DECISION - 7

object.

However, for two reasons, the Court does not rest its decision today solely on Debtor's lack of standing. First, the standing issue was not raised by Trustee, and the parties did not address it. Second, case law makes clear that the Court has a role to play in approving compromises, even in the absence of any objection. So, while lack of standing is a perfectly legitimate basis for summarily overruling the objection, the Court must nevertheless address the merits of the proposed compromise.

### C.   Trustee's Motion

Trustee elected to present the matter with no affirmative evidentiary presentation, with the stipulated consideration of Debtor's affidavit as direct testimony in opposition to the Motion, and with quite limited cross examination of Debtor. This made evaluation of the Motion more difficult than it otherwise needed to be. Still, for the reasons set out below, the Court concludes that Trustee carried his burden in virtually all regards, though there is one area requiring further submissions and clarification before the Motion can be granted.

#### 1.   Rule 9019 and authorities on settlement approval

Trustees have the discretion to negotiate settlements and to compromise disputes. However, under Fed. R. Bankr. P. 9019, the Court must approve any

such compromises or settlements.[11]  It is well established that the Court may approve a proposed compromise only if it is "fair and equitable" and supported by an adequate factual foundation.  *Olson*, 06.3 I.B.C.R. at 64.  Several factors may be considered, including (i) the probability of success in the litigation; (ii) the difficulty, if any, to be encountered in enforcement of the judgment(s); (iii) the complexity of the litigation, and the expense, inconvenience or delay involved; and (iv) the paramount interest of creditors and a proper deference to their views. *In re Marples*, 266 B.R. 202, 206, 01.3 I.B.C.R. 116, 118 (Bankr. D. Idaho 2001) (citing *In re Lake City RV, Inc.*, 226 B.R. 241, 243-44, 98.4 I.B.C.R. 104, 105 (Bankr. D. Idaho 1998), and *Martin v. Kane (In re A & C Props.)*, 784 F.2d 1377, 1381-83 (9th Cir. 1986)).  The burden of meeting these standards rests squarely on the Trustee.  *Olson*, 06.3 I.B.C.R. at 64-65; *see also In re Mickey Thompson Entm't Group, Inc.*, 292 B.R. 415, 420 (9th Cir. BAP 2003).

While a trustee's discretion in compromising disputes is readily acknowledged by this Court, a trustee's evaluation of the merits and wisdom of settlement is not alone determinative.  The Court is "not permitted to act as a mere

---

[11] Rule 9019(a) provides:

**(a) Compromise**.  On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement.  Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

MEMORANDUM OF DECISION - 9

rubber stamp" but, rather, must make an independent determination that the compromise is fair and equitable. *In re W. Point Props., L.P.*, 249 B.R. 273, 281 (Bankr. E.D. Tenn. 2000); *see also Olson*, 06.3 I.B.C.R. at 64 n.8.

But even given this important judicial function:

> [I]t is inappropriate for the court to substitute its own judgment as to the wisdom of a proposed settlement for that of the trustee. The court need not engage in an exhaustive analysis of the law and merits of each claim, or the likelihood of the outcome, as doing so would in large part defeat the purpose of settlement. Rather, the court's role is to ensure that the trustee has exercised proper business judgment in making the decision to agree to the proposed settlement, and that the settlement "falls above the lowest possible point in the range of reasonableness."

*In re Arkoosh Produce, Inc.*, 03.3 I.B.C.R. 149, 153, 2003 WL 25273746 (Bankr. D. Idaho 2003) (citing *In re 110 Beaver Street P'ship*, 244 B.R. 185, 187 (Bankr. D. Mass. 2000)) (other citations omitted); *accord In re Pacific Gas & Elec. Co.*, 304 B.R. 395, 417 (Bankr. N.D. Cal. 2004). *Arkoosh Produce* further notes that, in the context of settlements, the business judgment rule requires the trustee's decision to be made on an informed basis, in good faith, and in the bona fide belief that the action is in the best interests of the estate. If the trustee has complied with the business judgment rule and is properly informed of the facts, the Court can turn its attention to the four-factored analysis under *Marples* and *A & C Properties*. *See* 03.3 I.B.C.R. at 153.

MEMORANDUM OF DECISION - 10

### 2. The *A & C Properties* factors

#### a. **Probable success**

The Wright suit seeks in material part to enforce a statutory materialman's lien. Several serious impediments are presented under applicable state law, something even Debtor conceded in his scheduling of the cause of action as an asset. *See* Doc. No. 1 at sched. B.

Under Idaho Code § 45-501, *et seq.*, a person providing labor or materials in the construction of improvements on real property has a lien on such property for the value thereof. However, since such liens "are creatures of statute, [the] statutory requirements must be substantially complied with in order to perfect a valid lien." *See Bell v. Smith (In re Smith)*, 232 B.R. 461, 466, 98.4 I.B.C.R. 119, 121 (Bankr. D. Idaho 1998) (quoting *Baker v. Boren*, 934 P.2d 951, 961 (Idaho Ct. App. 1997)); *see also L & W Supply Corp. v. Chartrand Family Trust*, 40 P.3d 96, 101 (Idaho 2002).

The lien laws are remedial in nature and designed to protect those laborers and materialmen who have added directly to the value of property of another by their materials or labors. *Baker*, 934 P.2d at 961. But the Idaho courts are clear that the laws should not be construed to provide liens to persons who do not come within the terms of the statute, and lien claimants must therefore show that they have performed lienable labor and that they have substantially complied with the

MEMORANDUM OF DECISION - 11

Case 05-22188-TLM Doc 163 Filed 02/22/07 Entered 02/22/07 08:26:47 Desc Main
Document Page 12 of 20

statutory requirements to perfect their legitimate claim. *Boone v. P & B Logging Co.*, 397 P.2d 31, 33 (Idaho 1964).

The statutory elements are quickly summarized. To perfect the lien, § 45-507(2) requires the lienor to file a claim of lien within 90 days of the last day labor was provided or material supplied. The lien must contain (a) a statement of the lienor's demand "after deducting all just credits and offsets," (b) the name of the owner or reputed owner of the property, (c) the name of the person by whom the lienor was employed or to whom he furnished the materials, and (d) a sufficient description of the property. Idaho Code § 45-507(3). The claim must be verified by the oath of the claimant as just. Idaho Code § 45-507(4). The claimant must no later than five days after the lien is filed serve the same on the owner or reputed owner of the property either by personal delivery or by certified mail. Idaho Code § 45-507(5). A suit to foreclose the lien must be commenced within six months of the filing date. Idaho Code § 45-510.

Debtor's claim of lien suffers multiple defects under this statutory framework.

The claim of lien must be filed of record within 90 days after the completion of labor or last furnishing of materials. Idaho Code § 45-507(2). "[T]he time for filing a lien starts to run when the claimant performs his last substantial work or makes his last substantial delivery of material." *Hopkins v.*

MEMORANDUM OF DECISION - 12

*Merlins Insulation, Inc. (In re Larsen)*, 06.3 I.B.C.R. 61, 63 (Bankr. D. Idaho 2006) (quoting *Barlow's, Inc. v. Bannock Cleaning Corp.*, 647 P.2d 766, 769 (Idaho Ct. App. 1982)). The alleged May 30 date contained in the lien is not credible. *See* note 3 *supra*. Present submissions do not show when the last properly lienable substantial labor or material was provided, or that the timing requirement of the Idaho statute is met.

There is no certification by Debtor in his lien that the unpaid amount alleged of $93,000.00 is the net amount "after deducting all just credits and offsets." In fact, it appears that this lien amount is but a gross estimate of all Debtor's perceived contributions to the joint horse breeding enterprise. If there is reduction for any payments or economic benefits Debtor received, *i.e.*, arguable "credits or offsets," it is not evident in the lien.

The asserted basis for the lien, as contained in the document itself, includes more than just labor on or materials provided to the improvement or benefit of the liened real property.[12] For example, Debtor's lien describes personal property he owned and felt was improperly seized and retained by Wright when she locked him out of the property. There is nothing proffered to indicate that any of these

---

[12] The "materials" in the claim of lien include Debtor's movable personal property (*e.g.*, horses, fax machine, printer, baseball equipment, trucks) that was never attached to or contributed to the value of the real property. The portion of the $93,000.00 attributable to Debtor's masonry or other property-related labor or building or construction materials provided and installed on the property, as opposed to services in running the breeding business, movable property or some other theory of recovery, is decidedly unclear.

MEMORANDUM OF DECISION - 13

personal items, or their value, are justly asserted under the lien statute, which provides a lien only for a "person performing labor upon, or furnishing materials to be used in, the construction, alteration or repair of any . . . building . . . or any other structure" or who performs labor in regard to the improvements made to real property. Idaho Code § 45-501. The statutory lien is only for "the work or labor done or professional services or materials furnished." *Id.* The "seized" personal items have nothing to do with the labor on or materials used in the barn or other structures.[13]

Debtor's claims seem to presume an agreement with Wright under which Debtor would provide labor and materials and be "paid" for the same. However, there is no showing of any contract entitling Debtor to be paid (much less any contract the Debtor had with *himself* which is what his recorded lien asserts).[14] In fact, Debtor makes several arguments that might be viewed as negating the idea of a contract on which he would be paid and, instead, reflecting an "investment" on his part.[15]

---

[13] A lien claimant must be able to separate and distinguish lienable items of labor from non-lienable items. *Boone*, 397 P.2d at 33. If Debtor can do so, it certainly is not evident from the evidence presented, or from the lien as recorded.

[14] Idaho Code § 45-507(3)(c) requires the lien to set forth the name of the person the lienor was "employed by" or to whom he furnished materials. Debtor's claim of lien alleges he provided labor and material "in accordance with a contract with Joe Rake."

[15] *See, e.g.*, Doc. No. 144 (Debtor's brief) at 3, indicating that Debtor invested money, equipment and labor in the horse operation, and "made this investment with the expectation that

(continued...)

MEMORANDUM OF DECISION - 14

The claim of lien is not "verified by the oath of the claimant . . . to the effect that [he] believes the same to be just." Idaho Code § 45-507(4). While there is an acknowledgment (*i.e.*, showing that Debtor was identified as the party signing the claim of lien), there is no verification by him in accord with this subsection. The claim of lien, to be valid and enforceable, must contain the verification under oath required by § 45-407(4) as well as an acknowledgment. *Commercial Elec., Inc. V. JGC Enters., LLC (In re JGC Enters., LLC)*, No. 00-36002, 2002 WL 1378883 (9th Cir. 2002); *Cornerstone Builders, Inc. v. McReynolds*, 41 P.3d 271, 274 (Idaho Ct. App. 2001); *Treasure Valley Plumbing & Heating, Inc. v. Earth Res. Co.*, 684 P.2d 322, 324 (Idaho Ct. App. 1984).

The foregoing are not the only issues with the potential success or failure of the Wright suit. Trustee notes, without effective contradiction, that Debtor did not timely serve the lawsuit he filed to foreclose the lien.[16] Trustee and Wright also note that, following this Court's termination of the § 362(a) automatic stay related to the Wright suit, the state court entered a default judgment against Debtor. At a minimum, this will put the estate to the challenge of successfully setting aside the

---

[15](...continued)
he was building a business from which he could share the profits when it became profitable." This seems to belie there was any contract, even oral, that he be paid for the labor and materials.

[16] Debtor concedes his former attorney failed to effect service. Doc. No. 144 at 10. He argues that Wright's appearance in the lawsuit eliminates the need for service. Regardless of how this issue might play out in state court, it is nevertheless a threshold issue in valuing the litigation.

MEMORANDUM OF DECISION - 15

state court's ruling and reinvigorating the lawsuit.

All in all, the survey of the issues and record indicates that numerous, serious challenges are presented and that the Wright suit has little probability of success insofar as it seeks to enforce the lien.

The Dillon suit has its own problems. There is a lack of factual detail as to whether Dillon actually has Debtor's property (*i.e.*, the fence panels). Additionally, if credence is given to Debtor's arguments about how he "contributed" assets (including the fence panels) to his and Wright's joint horse operation, this could impact any claim *against Dillon* for wrongful possession of *Debtor's* personal property sufficient to support a claim and delivery action.

There are, in short, substantial difficulties with ascribing any potential for success to the lien enforcement and claim and delivery litigation Trustee inherited. Even if there were some possibility of success, the magnitude is decidedly unclear, and it would require substantial litigation and investment of time and money to attempt to realize it.

### b. Difficulty of collection

The difficulty in collecting on any judgment against Wright is minimal. Wright's attorney holds money in his trust account from the sale of the real property, and there is no indication that a money judgment could not be promptly

MEMORANDUM OF DECISION - 16

satisfied.[17]  The ability to collect against Dillon is unknown.

### c.     The litigation needed

The expense, delay and inconvenience of litigation is a credible factor. Trustee would have to overcome several hurdles to even get to trial on the lien claim merits against Wright.[18]  The expense reasonably to be incurred in surviving these several initial skirmishes, and then that to be incurred in a merits trial, reduces the realizable benefit of the overall litigation.  The litigation expense and the time necessary to reach a judgment, even assuming one can be reached, reduces its real value to creditors.

### d.     Creditors' views

The Court is to consider the input and position of creditors.  Here, no creditors have objected to the compromise; Debtor raises the sole objection. Creditor silence to a noticed compromise proposal can be equivocally viewed, *see Marples*, 266 B.R. at 207, 01.3 I.B.C.R. at 118, nevertheless, there was no creditor opposition voiced.

The weighing of these four general *A & C Properties* factors supports a conclusion that the suggested compromise is reasonable, fair and equitable.

---

[17] As noted earlier, the real property was sold, and the remedy of lien foreclosure was itself foreclosed.  But the complaint in the Wright suit, as located by the Court, also seeks a money judgment as well as foreclosure of the lien against Wright's real property.

[18] There has been no showing one way or the other as to what might be faced in a trial with Dillon.

MEMORANDUM OF DECISION - 17

Trustee is exchanging dismissal with prejudice of the problematic Wright lien enforcement suit and the Dillon claim and delivery suit in return for $5,000.00, and for Wright's withdrawal of any asserted secured claims to the motor vehicles, motorcycle and boat. Wright also waives and releases any other claims she might have against the estate.[19] This agreement falls within the range of reasonableness and appears an appropriate exercise of Trustee's business judgment.

### 3. Non-lien claims

There is one other facet to this matter that must be addressed. Much of what Debtor argues in his briefing does not relate to the potential of a successfully asserted mechanics' or materialmen's lien claim under the Idaho statutes. Instead, it concerns an argument that Debtor and Wright had a de facto partnership and that Debtor has rights to a distributive interest of "partnership" assets, an "accounting" or some other sort of claim. *See*, *e.g.*, Doc. No. 144 at 5-8. Wright argues in her briefing that Debtor's partnership assertions are brand new.[20] That is true, at least insofar as the pleadings of record are concerned. Wright correctly observes that

---

[19] On October 26, 2006, the Court issued a notice to creditors under Fed. R. Bankr. P. 3002(c)(5) advising of the possibility of distribution and the need to file claims. *See* Doc. No. 115. This notice and the Rule established a claim bar date of ninety (90) days from the date of the notice, or January 23, 2007. That date has passed. A review of the proofs of claim of record reflects none filed by Wright. The release of claims therefore in one sense has little value because Wright has no filed proofs of claim. But the release has some value because it would encompass any "secured" claims to vehicles and/or their sales proceeds.

[20] *See* Doc. No. 157 at 2 (noting that this "is the first time" Debtor has asserted any arguments or contentions about an alleged partnership).

MEMORANDUM OF DECISION - 18

Debtor never listed as an asset any interest in a partnership or any claims against Wright other than the lien claim. *See* Doc. No. 1, 40 (at sched. B).

The compromise, as presented to the Court, includes a release of any and all of Wright's claims against the estate. It did not expressly contain a reciprocal release of any and all claims the estate has against Wright. Instead, it simply provided for the dismissal with prejudice of the Wright suit. The problem, though, is that the state court complaint the Court has unearthed seeks a money judgment against Wright for the "labor, services and materials" he provided. Dismissal of the suit with prejudice may constitute a bar on any later assertion by the estate of non-lien, partnership claims under the claim preclusion doctrine. *See Robi v. Five Platters, Inc*, 838 F.2d 318, 321-22 (9th Cir. 1988) ("Claim preclusion prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding."); *Elsaesser v. Hemme (In re Shewey)*, 03.1 I.B.C.R. 68, 69 (Bankr. D. Idaho 2003).

Trustee has not addressed in any of his submissions or briefing his evaluation of the non-lien claims. There is no indication (a) whether Trustee believes such claims are separate from or otherwise survive the dismissal with prejudice of the Wright suit, or (b) if included in the overall compromise with Wright, how the *A & C Properties* factors apply to the settlement of these claims

in return for the titles, $5,000.00 and Wright's release of her claims.

**CONCLUSION**

Debtor's objection will be overruled for lack of standing.  However, the Motion cannot be granted – notwithstanding Trustee's showing of the appropriateness of the suggested settlement when evaluated solely against the lien claims – until Trustee clarifies the issues and analysis of the non-lien claims.

The Court will enter an order in accord herewith.

DATED:  February 22, 2007

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 20